In 1970, D.B. Mooneyham, Jack Mooneyham, Jack Mooneyham, and Joe Mooneyham purchased 173 acres of land in Blount County from Alton and Emma Gay. In 1988, Billie and Laquita Wray purchased 215 acres of land in Blount County from the heirs of W.E. Morris. Approximately 140 acres owned by the Mooneyhams are contiguous to approximately 103 acres owned by the Wrays.
After the Wrays purchased this property, they contracted with Drennen Timber Company to cut the timber on a portion of the land. After the timber company began cutting the trees, Jack Mooneyham approached Mr. Wray and advised him that he was cutting timber on land owned by the Mooneyhams. Mr. Wray did not order Drennen Timber Company to discontinue cutting timber; Drennen Timber Company continued cutting the timber, and received $10,000 for the timber cut on all of their acreage.
The Mooneyhams[1] filed a complaint in the Blount County Circuit Court, asking the trial court to determine the true and correct boundary line between their property and the Wrays' property. In their complaint, the Mooneyhams also sued the Wrays for damages for trespass. They alleged that they held the land under color of title and also by adverse possession. The trial court held that title to the disputed property was in the Mooneyhams, and it restrained and enjoined the Wrays from using the disputed property. Additionally, the trial court awarded the Mooneyhams $10,000 in damages.
The Wrays appeal, raising two issues. They argue that the trial court erred in holding that title to the disputed property was in the Mooneyhams. They also argue that the trespass damages awarded were unsupported by the evidence and were excessive. We address the issues in order.
It is undisputed that the boundary line between the Mooneyhams' property and the Wrays' property runs roughly north to south, and that the Mooneyham property is west of the Wrays' property. For a physical description of the disputed property, see Appendix 1. The remaining references to the property will be to Appendix 1.
The Mooneyhams argue that the boundary runs south from the "channel iron in the rockpile" to the "buggy axle" to the "pipe found." The Wrays argue that the boundary runs from the "channel iron in the rockpile" to the "railroad spike" to the "pipe found."
The trial court heard ore tenus evidence. Where testimony is presented ore tenus, the trial court's findings are presumed correct and will not be disturbed unless palpably erroneous, without supporting evidence, or manifestly unjust. Howell v.Bradford, 570 So.2d 643, 644 (Ala. 1990). This presumption is especially strong in boundary line disputes and adverse possession cases. Id. at 644; Scarbrough v. Smith,445 So.2d 553 (Ala. 1984).
The evidence concerning the Mooneyhams' claim to the land by virtue of a deed (color of title) is conflicting; that is, the parties produced conflicting evidence concerning where the deed established the boundary line. However, the following evidence supports the trial court's judgment that established the boundary line in accordance *Page 183 
with the Mooneyhams' arguments concerning the location of the boundary line as established by the deed:
Pete Copeland, a former owner of the Mooneyham property, testified that his father had owned the Mooneyham property and that both he and his father had established the boundary east of the chert road where the Mooneyhams claim it to be.
Ray Jones, an owner of adjoining land, testified that before the Mooneyhams purchased the property, he was offered the Mooneyham property for sale and that the agent represented the boundary line to be as the Mooneyhams stated it to be.
Additionally, Frank Hollis, the Mooneyhams' surveyor, used the deed's description of the land, Government field notes and maps, surveys done in the area, and various points on the ground and calculated the boundary to be as the Mooneyhams assert it to be.
Viewing the evidence with the appropriate presumption of correctness, we hold that the trial court's determination of the boundary line is supported by the evidence.
The Wrays next argue that the damages for trespass were unsupported by the evidence and that they were excessive.
The correct measure of damages for trespass on land is the difference between the value of the land immediately before the trespass and the value immediately after it. Dollar v.McKinney, 267 Ala. 627, 103 So.2d 785 (1958); See Boatright v.Morgan, 575 So.2d 1091 (Ala. 1991). The only evidence presented concerning damages was the testimony of Jack Mooneyham. Mooneyham stated that, in his opinion, the value of the tract of land of which the disputed property is a part,[2] was approximately $19,000 before the timber was cut and $10,000 thereafter.
Moreover, this Court has stated the following concerning damages in an action for trespass:
 "[W]hen a trespass is perpetrated in a rude, wanton, reckless, or insulting manner, or is accompanied by circumstances of fraud, malice, oppression, or aggravation, or even with gross negligence, the party injured is entitled to recover punitive damages." Ex parte SouthTrust Bank of Alabama, N.A., 523 So.2d 407 (Ala. 1988).
Mr. Wray admitted that he was informed at least twice by Jack Mooneyham that the boundary was in dispute, and that he was asked not to cut the timber until the dispute was resolved. Nevertheless, he made no effort to have Drennen Timber Company discontinue cutting the timber.
The trial court's award of $10,000 is supported by the evidence and is not excessive.
Based on the foregoing, the judgment of the trial court is affirmed.
AFFIRMED.
HORNSBY, C.J., and MADDOX, SHORES, HOUSTON and KENNEDY, JJ., concur.
[1] John Mooneyham, as executor, sued on behalf of the estate of D.B. Mooneyham, deceased.
[2] Although we have previously stated in this opinion that the Mooneyhams own 173 acres of land, Jack Mooneyham's statement concerning the value of the "tract of land" concerns only 33 acres. *Page 184 
 APPENDIX 1
[EDITORS' NOTE: ': This map IS ELECTRONICALLY NON-TRANSFERRABLE.]